UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 19-CR-00184-LHK |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT** |
| v. | Re: Dkt. No. 17 |
| MANUEL CEJA-MELCHOR, | |
| Defendant. | |

Before the Court is Defendant Manuel Ceja-Melchor's ("Defendant") motion to dismiss the Indictment for illegal reentry following deportation in violation of 8 U.S.C. § 1326. ECF No. 26 ("Mot."). Having considered the filings of the parties, the relevant law, and the record in this case, the Court GRANTS Defendant's motion to dismiss the Indictment.

## I. BACKGROUND

### A. Factual Background

Defendant, a citizen of Mexico, entered the United States without inspection and, on or about June 13, 1991, adjusted his status to that of a lawful permanent resident. ECF No. 28-3 ("NTA"). Defendant has multiple criminal convictions including a March 5, 2012 conviction for the transportation of a controlled substance in violation of California Health and Safety Code

1

1  Section 11352(a).  *Id.*; *see also* ECF No. 28 ("Vargas Decl.") ¶ 7.

2  On December 19, 2012, after the Government received a lead on Defendant and performed

3  a criminal history check, Deportation Officer David Vargas prepared a Form I-862, Notice to

4  Appear ("NTA") charging Defendant with removability under sections 237(a)(2)(A)(iii) and

5  237(a)(2)(B)(i) of the Immigration and Nationality Act ("INA").  Vargas Decl. ¶¶ 7–8; NTA at 3.

6  The NTA did not identify the address of the immigration court at which the NTA would be filed.

7  NTA at 1.  Instead, under the text, "YOU ARE ORDERED to appear before an immigration judge

8  of the United States Department of Justice at:," the NTA was left blank.  *Id.*

9  On December 20, 2012, Defendant was taken into custody.  Vargas Decl. ¶ 9.  Defendant

10  was issued an Order of Release on Recognizance after the Government learned that numerous

11  detention facilities had no available bed space, and Defendant promised not to violate any local,

12  State, or Federal laws or ordinances.  *Id.* ¶ 10.

13  On or about June 17, 2017, Defendant was arrested by the Salinas Sheriff's Department for

14  possession and sale of a controlled substance, carrying loaded firearms, obstructing a public

15  officer, driving with a suspended license, and a probation violation.  *Id.* ¶ 12.  Due to Defendants'

16  failure to comply with the terms of his release, Defendant was taken back into custody on August

17  11, 2017.

18  On August 31, 2017, Defendant was issued a Notice of Hearing ("NOH) that informed him

19  that he was scheduled for a custody hearing on September 20, 2017 at 1:00 p.m. at Immigration

20  Court located at 630 Sansome Street, 4th Floor, Courtroom 2, San Francisco, CA 94111.  *See* ECF

21  No. 28-9 ("August 31, 2017 NOH").  At the September 20, 2017 hearing, Defendant, through his

22  counsel, indicated that he wanted to be ordered removed from the United States.  Vargas Decl.

23  ¶ 14.  Defendant's counsel, however, asked for a one-week continuance to ensure that Defendant

24  truly wanted a removal order instead of a voluntary departure.  *Id.*  The Immigration Court granted

25  the request for a continuance and issued a Notice of Hearing before the Immigration Court located

26  at 630 Sansome Street, 4th Floor, Courtroom 2, San Francisco, CA 94111.  *Id.*, *see also* ECF No.

27  28-10 ("September 20, 2017 NOH").  At the September 27, 2017 hearing, the Immigration Judge

28

2

Case No. 19-CR-00184-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT

1    asked Defendant's counsel if Defendant wanted to consider voluntary departure.  Defendant's

2    counsel indicated yes, but the Immigration Judge ultimately denied voluntary departure and

3    ordered Defendant removed.  Vargas Decl. ¶ 15; ECF No. 28-11 ("September 2017 removal

4    order").  Defendant waived his right to appeal.  *Id.*

5    **B. Procedural History**

6    On April 18, 2019, a grand jury in the Northern District of California returned an

7    Indictment ("Indictment") that charged Defendant with one count of violating 8 U.S.C. § 1326(a),

8    Illegal Reentry of Removed Alien.  ECF No. 1 ("Indictment").  Specifically, the grand jury

9    charged as follows: "On or about April 4, 2019, in Monterey County in the Northern District of

10   California, the [D]efendant, . . . an alien, previously having been excluded, deported and removed

11   from the United States on or about July 6, 2018, was found in the United States, with the Attorney

12   General of the United States and the Secretary for Homeland Security not having expressly

13   consented to a re-application by the [D]efendant for admission into the United States."  *Id.* at 1.

14   On January 26, 2020, Defendant filed a motion to dismiss the Indictment.  ECF No. 26

15   ("Mot.").  On March 11, 2020, the Government opposed the motion, ECF No. 27 ("Opp'n"), and

16   on April 1, 2020, Defendant filed a reply, ECF No. 32 ("Reply").

17   **II.    LEGAL STANDARD**

18   **A. Motion to Dismiss Indictment**

19   Under Federal Rule of Criminal Procedure 12(b)(3)(B)(v), a defendant may move to

20   dismiss an indictment on the ground that the indictment "fail[s] to state an offense."  In

21   considering a motion to dismiss an indictment, a court must accept the allegations in the

22   indictment as true and "analyz[e] whether a cognizable offense has been charged."  *United States*

23   *v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002).  "In ruling on a pre-trial motion to dismiss an

24   indictment for failure to state an offense, the district court is bound by the four corners of the

25   indictment."  *Id.*  A motion to dismiss an indictment can be determined before trial "if it involves

26   questions of law rather than fact."  *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448,

27   1452 (9th Cir.), *cert. denied*, 478 U.S. 1007 (1986).

28   
3

**B. Collateral Attack on a Deportation**

"For a defendant to be convicted of illegal reentry under 8 U.S.C. § 1326, the Government must establish that the defendant left the United States under order of exclusion, deportation, or removal, and then illegally reentered." *United States v. Raya-Vaca*, 771 F.3d 1195, 1201 (9th Cir. 2014) (internal quotation marks and citation omitted). "A defendant charged under § 1326 has a due process right to collaterally attack his removal order because the removal order serves as a predicate element of his conviction." *Id.* (internal quotation marks and citation omitted).

To demonstrate that a prior deportation cannot serve as the basis for an indictment for illegal reentry, 8 U.S.C. § 1326(d) requires that a defendant "demonstrate that (1) he exhausted the administrative remedies available for seeking relief from the predicate removal order; (2) the deportation proceedings 'improperly deprived [him] of the opportunity for judicial review'; and (3) the removal order was 'fundamentally unfair.'" *Id.* (quoting 8 U.S.C. § 1326(d)) (brackets in original). "To satisfy the third prong—that the order was fundamentally unfair—the defendant bears the burden of establishing both that the deportation proceeding violated his due process rights and that the violation caused prejudice." *Id.* (internal quotation marks, citation, and brackets omitted).

**III. DISCUSSION**

In Defendant's motion to dismiss the Indictment, Defendant asserts that the United States Department of Homeland Security's failure to file a proper Form I-862, Notice to Appear ("NTA"), with the Immigration Court deprived the Immigration Court of jurisdiction to remove Defendant. Mot. at 2–7. Defendant asserts that this failure provides the grounds for Defendant to collaterally attack the Indictment under 8 U.S.C. § 1326(d). *Id.* at 7–8. Defendant also claims that the Court should dismiss the Indictment because Defendant received ineffective assistance of counsel and because the Immigration Judge failed to advise Defendant of his eligibility for discretionary relief. *Id.* at 8–10.

For the reasons outlined below, the Court agrees with Defendant that the Immigration Court lacked jurisdiction to issue the September 2017 removal order because of the defective

4

Case No. 19-CR-00184-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT

1    NTA.  Further, this lack of jurisdiction permits Defendant to collaterally attack the Indictment

2    under 8 U.S.C. § 1326(d).  Because these facts are sufficient to warrant dismissal of the

3    Indictment, the Court need not address Defendant's additional arguments.

4    **A.  The Immigration Court Lacked Jurisdiction over Defendant**

5    Defendant argues that the September 2017 removal order cannot constitute a prior lawful

6    deportation that supports the single count violation of 8 U.S.C. § 1326(a), Illegal Reentry of

7    Removed Alien, charged in the Indictment.  Mot. at 1.  This is so, Defendant claims, because the

8    NTA "did not identify the court where the NTA would be filed, [which failed] to vest the Court

9    with jurisdiction" pursuant to 8 C.F.R. § 1003.14(a) and 8 C.F.R. § 1003.15(b)(6).  *Id.* at 2.

10   In response, the Government makes two arguments.  First, the Government asserts that the

11   requirements of 8 C.F.R. § 1003.14(a) is not actually jurisdictional in nature.  Instead, the

12   Government maintains that 8 C.F.R. § 1003.14(a) sets forth only a "claim-processing rule" that

13   does not limit the Immigration Court's adjudicatory authority.  Opp'n at 4–13.  Second, the

14   Government asserts that even if 8 C.F.R. § 1003.14(a) is jurisdictional in nature, Defendant had

15   "actual notice" of the removal hearing such that jurisdiction adequately vested in the Immigration

16   Court in any event.  *Id*. at 13–15.

17   The Court agrees with Defendant.  The defective NTA deprived the Immigration Court of

18   jurisdiction over Defendant for the purposes of the September 2017 removal order.  The

19   Government's actions following the filing of the defective NTA did not vest the Immigration

20   Court with jurisdiction.

21   The Court begins by providing a brief background of the statutory and regulatory scheme

22   that sets forth the contents an NTA must contain.  The Court then analyzes the question of whether

23   8 C.F.R. § 1003.14(a) and 8 C.F.R. § 1003.15(b)(6) set forth jurisdictional rules.  Finally, the

24   Court turns to the question of whether Defendant's purported "actual notice" of the address of the

25   Immigration Court in which the NTA was filed may remedy a jurisdictional defect in the NTA.

26   **1.  Statutory and Regulatory Background**

27   The Court begins by providing background on the regulatory scheme that sets forth the

28   

5

Case No. 19-CR-00184-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT

1    content that an NTA must contain.  The Immigration and Nationality Act, 8 U.S.C. § 1101, *et seq.*,

2    broadly delegates authority to the Attorney General to "establish such regulations . . . as the

3    Attorney General determines to be necessary for carrying out this section."  8 U.S.C. § 1103(g)(2).

4    Pursuant to this grant of authority, the Attorney General has promulgated regulations that speak to

5    the "[j]urisdiction and commencement of proceedings" in Immigration Court.  8 C.F.R. § 1003.14.

6    In particular, 8 C.F.R. § 1003.14(a) dictates that "[j]urisdiction vests, and proceedings before an

7    Immigration Judge commence, when a charging document is filed with the Immigration Court by

8    the Service."  8 C.F.R. § 1003.14(a).  A "charging document" is defined in the regulations to

9    consist of several types of documents, potentially including "a Notice to Appear."  8 C.F.R.

10   § 1003.13.  Finally, the regulations require that an NTA contain certain information.  8 C.F.R.

11   § 1003.15(b).  Importantly for the instant case, the regulations dictate that an NTA "must" include

12   the "address of the Immigration Court where the Service will file" the NTA.  8 C.F.R. §

13   1003.15(b)(6).

14          It is undisputed that the NTA at issue in the instant case lacked the "address of the

15   Immigration Court where the Service" would file the NTA, as required by 8 C.F.R. §

16   1003.15(b)(6).  NTA at 1.  Accordingly, the first question before the Court is whether 8 C.F.R. §

17   1003.14(a) and 8 C.F.R. § 1003.15(b)(6) set forth jurisdictional rules, such that the NTA's failure

18   to include the "address of the Immigration Court where the Service will file" the NTA deprived

19   the Immigration Court of jurisdiction to issue the September 2017 removal order.

20          **2.  8 C.F.R. § 1003.14(a) and 8 C.F.R. § 1003.15(b)(6) Set Forth Jurisdictional Rules**

21          Defendant's motion to dismiss the Indictment is premised on the argument that 8 C.F.R.

22   § 1003.14(a) and 8 C.F.R. § 1003.15(b)(6) set forth rules that govern the jurisdiction of the

23   Immigration Court.  As Defendant puts it, the "regulation requiring identification of the court

24   address where the NTA will be filed goes to the authority of the immigration court to adjudicate a

25   case—*i.e.*, to the court's subject matter jurisdiction."  Reply at 8.  The Government disagrees, and

26   argues that the regulations only set forth a "claim-processing rule."  Opp'n at 5.  Thus, the

27   Government claims that the failure to include the Immigration Court address in the NTA did not

28
                                                   6
     Case No. 19-CR-00184-LHK
     ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT

1    deprive the Immigration Court of jurisdiction over Defendant's removal proceedings because "the

2    regulations [do not] limit the Immigration Court's adjudicatory authority." *Id.* at 5.

3        The Court agrees with Defendant. The requirement that an NTA include the "address of

4    the Immigration Court where the Service will file" the NTA, 8 C.F.R. § 1003.15(b)(6), is

5    jurisdictional in nature. The Court reaches this conclusion because it is bound by a recent Ninth

6    Circuit decision, *Karingithi v. Whitaker*, 913 F.3d 1158 (9th Cir. 2019). According to Defendant,

7    the Ninth Circuit's recent decision in *Karingithi* held that the applicable regulations "govern the

8    subject matter jurisdiction" of the Immigration Court. Reply at 1. Thus, because "*Karingithi* is

9    binding on this Court," Defendant claims that the Court must reject Defendant's argument that 8

10   C.F.R. § 1003.15(b) only sets forth a claim-processing rule. *Id.* at 2. The Court agrees.

11   *Karingithi* stands for the proposition that 8 C.F.R. § 1003.14(a) and 8 C.F.R. § 1003.15(b)(6) are

12   jurisdictional in nature.

13       In *Karingithi*, the Ninth Circuit considered the question of whether the Immigration Court

14   lacked jurisdiction over removal proceedings when the NTA that served as the charging document

15   failed to specify the date and time of the removal hearing as required by 8 U.S.C. §

16   1229(a)(1)(G)(i). 913 F.3d at 1159–60. The Ninth Circuit answered this question in the negative.

17   *Id.* at 1160. In the course of doing so, the Ninth Circuit held that "the regulations, not § 1229(a),

18   define when jurisdiction vests." Accordingly, because the operative regulations indicate that the

19   date and time of the removal hearing need only be provided "where practicable," 8 C.F.R.

20   § 1003.18(b), the Ninth Circuit held that omission of that information did not affect the

21   Immigration Court's ability to hold a removal hearing. 913 F.3d at 1160. As the Ninth Circuit put

22   it, "[t]he regulatory definition, not the one set forth in § 1229(a), governs the Immigration Court's

23   jurisdiction. A notice to appear need not include time and date information to satisfy this

24   standard. Karingithi's notice to appear *met the regulatory requirements and therefore vested*

25   *jurisdiction in the IJ*." *Id.* (emphasis added).

26       The natural import of the *Karingithi* court's holding is that "[t]he regulatory definition" of

27   an NTA "governs the Immigration Court's jurisdiction." *Id.* The regulatory definition of an NTA

28

United States District Court
Northern District of California

1    includes the requirement that an NTA include the "address of the Immigration Court where the

2    Service will file" the NTA, 8 C.F.R. § 1003.15(b)(6). Thus, the requirement outlined in 8 C.F.R.

3    § 1003.15(b)(6) "governs the Immigration Court's jurisdiction." This is precisely the conclusion

4    that this Court and most of the district courts in the Ninth Circuit have reached when confronted

5    with the applicability of *Karingithi*'s holding to the question before the Court. *See, e.g.*, *United*

6    *States v. Suchite-Ramirez*, No. 19-CR-00118-RMP, 2019 WL 4396142, at *2 (E.D. Wash. Sept.

7    13, 2019) (holding that the Government's argument that 8 C.F.R. § 1003.15(b)(6) is claim-

8    processing "directly contradicts the Ninth Circuit's reasoning in *Karingithi*"); *United States v.*

9    *Gutierrez-Ramirez*, No. 18-CR-00422-BLF, 2019 WL 3346481, at *6 (N.D. Cal. July 25, 2019)

10   ("[I]t is clear that *Karingithi* contemplates that Section 1003.15 is jurisdictional."); *United States*

11   *v. Ramos-Urias*, No. 18-CR-00076-JSW, 2019 WL 1567526, at *2 (N.D. Cal. Apr. 8, 2019)

12   ("*Karingithi* and *Bermudez-Cota* teach that satisfying the regulations, not the statute, is crucial to

13   establish the Immigration Court's jurisdiction."); *United States v. Rosas-Ramirez*, No. 18-CR-

14   00053-LHK, 2019 WL 6327573, at *4 (N.D. Cal. Nov. 26, 2019) ("*Karingithi* stands for the

15   proposition that 8 C.F.R. § 1003.15(b) is jurisdictional in nature."); *United States v. Nunez-*

16   *Romero*, No. 18-CR-00425-LHK-1, 2020 WL 1139642, at *4 (N.D. Cal. Mar. 9, 2020)

17   ("*Karingithi* stands for the proposition that 8 C.F.R. § 1003.14(a) and 8 C.F.R. § 1003.15(b)(6) are

18   jurisdictional in nature.").

19        As discussed *supra*, the language of the regulations governing the jurisdiction of the

20   Immigration Court also supports the *Karingithi* court's conclusion. The regulations provide that

21   jurisdiction "vests" only "when a charging document is filed with the Immigration Court," 8

22   C.F.R. § 1003.14, and a "Notice to Appear," is such a "charging document," 8 C.F.R. § 1003.13.

23   The regulation at 8 C.F.R. § 1003.15(b)(6) provides that an NTA "must also include" "[t]he

24   address of the Immigration Court where the Service will file the Order to Show Cause and Notice

25   to Appear." *Id.* Thus, by the plain language of the regulations, a document that lacks "[t]he

26   address of the Immigration Court where the Service will file the Order to Show Cause and Notice

27   to Appear" is not an NTA, and therefore cannot "vest" jurisdiction with the Immigration Court. 8

28

8

1  C.F.R. §§ 1003.14, 1003.15(b)(6).

2  Further, as United States District Judge Jeffrey White has noted, 8 C.F.R. §§ 1003.15(a)

3  and (c) contain a disclaimer that omission of the information mandated by those sections "shall not

4  be construed as affording the alien any substantive or procedural rights."  8 C.F.R. § 1003.15(a),

5  (c); *Ramos-Urias*, 2019 WL 1567526, at \*2.  By contrast, the regulation at issue in the instant

6  motion, 8 C.F.R. § 1003.15(b), lacks such a disclaimer, which further confirms the jurisdictional

7  scope of 8 C.F.R. § 1003.15(b).  *See also United States v. Benitez-Dominguez*, No. 19-CR-99

8  (NGG), 2020 WL 903008, at \*7 & n.5 (E.D.N.Y. Feb. 24, 2020) (relying on distinction between 8

9  C.F.R. § 1003.15(b) and neighboring subsections to conclude that "NTA lacked the address of the

10  immigration court where it was to be filed is an independently sufficient error that deprived the

11  immigration court of jurisdiction to order . . . removal").

12  For instance, as Judge White noted, 8 C.F.R. § 1003.15(c) dictates that "[i]n the Notice to

13  Appear for removal proceedings, the Service shall provide the following administrative

14  information to the Immigration Court."  Section 1003.15(c) goes on to list various pieces of

15  information, such as the "alien's names and any known aliases," and the "alien's address."

16  *Ramos-Urias*, 2019 WL 1567526, at \*2.  However, the section contains the aforementioned

17  disclaimer, and the regulation thus dictates that omission of the required information "shall not be

18  construed as affording the alien any substantive or procedural rights."  *Id.*  Section 1003.15(a),

19  which only concerns orders to show cause, also contains the foregoing disclaimer.  8 C.F.R.

20  § 1003.15(a).

21  By contrast, 8 C.F.R. § 1003.15(b), the regulatory section at issue in the instant motion,

22  does not contain the disclaimer.  The natural reading of the lack of disclaimer is that omission of

23  the information required by 8 C.F.R. § 1003.15(b)(6) *does* afford the alien "substantive or

24  procedural rights," in contrast to 8 C.F.R. §§ 1003.15(a) and (c).  *See, e.g.*, *United States v.*

25  *Ramos-Urias*, 2019 WL 1567526, at \*2 ("The Court agrees with Mr. Ramos-Urias that the

26  absence of the disclaimer in subsection (b) is significant. . . .  Drafters of regulations and statutes

27  are presumed to choose their words with precision." (citations omitted)); *see also N.L.R.B. v. SW*

28

9

Case No. 19-CR-00184-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT

1    *Gen., Inc.*, 137 S. Ct. 929, 940 (2017) ("If a sign at the entrance to a zoo says 'come see the

2    elephant, lion, hippo, and giraffe,' and a temporary sign is added saying 'the giraffe is sick,' you

3    would reasonably assume that the others are in good health.").

4            As Judge White noted, this distinction "is particularly sensible." *Id.* at *3. Although 8

5    C.F.R. §§ 1003.15(a) and (c) both "describe categories of identifying information of which an

6    alien is likely already aware," such as the alien's name and known aliases, 8 C.F.R. § 1003.15(b)

7    demands that an NTA include information about *the removal process itself*. *Id.* "It is logical that

8    an NTA's failure to include an alien's alias or preferred language, for example, would not carry

9    the same consequences as an NTA's failure to include . . . the address of the Immigration Court

10   where the NTA would be filed." *Id.*

11           Insofar as the Government might argue that *Karingithi*'s discussion of the jurisdictional

12   import of 8 C.F.R. § 1003.15(b)(6) is dicta, *see United States v. Diaz-Lastra*, No. 19-CR-00396-

13   DWL, 2019 WL 4394542, at *3 (D. Ariz. Sept. 13, 2019) ("Those passages, however, are

14   arguably dicta because they were unnecessary to [] resolve the narrow issue before the court. . .

15   ."), the Court disagrees. The *Karingithi* court's discussion of the jurisdictional nature of the

16   regulations served as the point of comparison that the *Karingithi* court used to resolve the question

17   that the *Karingithi* court faced. The *Karingithi* court thus squarely confronted "an issue germane

18   to the eventual resolution of the case, and resolve[d] it after reasoned consideration in a published

19   opinion." *Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1186 (9th Cir. 2003). The *Karingithi* court's

20   determination that the regulations set forth jurisdictional requirements for the Immigration Court

21   is therefore not dicta. *Id.*; *see also Gutierrez-Ramirez*, 2019 WL 3346481, at *6 ("*Karingithi*

22   clearly contemplates that the requirements in Section 1003.15 are 'for jurisdictional purposes.'").

23           Further, and in any event, the Court remains bound by "well-reasoned dicta" of the Ninth

24   Circuit. *See, e.g.*, *Bank of Manhattan, N.A. v. F.D.I.C.*, 778 F.3d 1133, 1136 n.2 (9th Cir. 2015)

25   ("Well-reasoned dicta is the law of the circuit." (internal quotation marks and citation omitted)).

26   The reasoning of the *Karingithi* court clearly dictates that 8 C.F.R. § 1003.14(a) and 8 C.F.R.

27   § 1003.15(b)(6) are jurisdictional, and this Court would be bound by this conclusion even if it

28                                                      10

1    were in fact well-reasoned dicta.  *See, e.g.*, *Andrade v. United States*, No. 19-cv-00930-BAS-

2    WVG, 2020 WL 835304, at *4 (S.D. Cal. Feb. 20, 2020) ("This Court cannot ignore the Ninth

3    Circuit's statements regarding the scope of the law, even when made in dicta.").

4        Additionally, according to the Government, *Karingithi* did not address the meaning of the

5    term "jurisdiction" as recited in 8 C.F.R. § 1003.14(a).  Opp'n at 11; *see also United States v.*

6    *Medina*, No. 18-CR-653-GW, 2019 WL 4462701, at *6 (C.D. Cal. Sept. 4, 2019) ("[N]owhere in

7    [the] decision does the Circuit indicate that the reference to 'jurisdiction' means 'subject matter

8    jurisdiction' rather than other types of jurisdiction.").  Thus, the Government argues, *Karingithi*

9    may be read to refer only to a claim-processing rule.  Opp'n at 11.  The plain import of the

10   *Karingithi* court's language, however, suggests that the *Karingithi* court was concerned with more

11   than just a claim-processing rule.  For instance, the *Karingithi* court repeatedly pointed to the

12   regulations as dispositive of when jurisdiction "vests" with the Immigration Court, and when the

13   Immigration Court has jurisdiction "over [] removal proceedings."  913 F.3d at 1160, 1162.  This

14   language suggests that the Ninth Circuit's references to jurisdiction refer to subject matter

15   jurisdiction.  *See United States v. Cruz-Aguilar*, 394 F. Supp. 3d 1313, 1318–19 (E.D. Wash.

16   2019) (reading *Karingithi* to proscribe "subject matter jurisdiction over a noncitizen's removal

17   proceeding").

18       Indeed, other federal courts of appeals have understood the *Karingithi* language in this

19   way.  *See, e.g.*, *United States v. Cortez*, 930 F.3d 350, 359 (4th Cir. 2019) (citing *Karingithi* as an

20   example of a case in which a court "treat[ed] § 1003.14(a) as though it implicates an immigration

21   court's adjudicatory authority or 'subject matter jurisdiction'").  The parties in *Karingithi* also

22   clearly briefed the issue in this way.  *See, e.g.*, *Karingithi*, CA No. 16-70885, Supp'l Brief for

23   Pet'r, Dkt. 56 at 19 (discussing the regulations' impact on "subject matter jurisdiction"); *id.*,

24   Supp'l Brief for Resp., Dkt. 57 at 7 ("Under the controlling regulations, the Immigration Court

25   had subject-matter jurisdiction over Karingithi's removal proceedings.").

26       Some district courts have attempted to limit the import of *Karingithi* by concluding that

27   *only some* of the applicable regulations are jurisdictional in nature.  For instance, in *United States*

28
Case No. 19-CR-00184-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT

1   *v. Arteaga-Centeno*, No. 18-CR-00332-CRB, 2019 WL 3207849 (N.D. Cal. July 16, 2019), the

2   court held that *Karingithi* should be read to indicate that "the jurisdictional provisions of the

3   regulations are limited to §§ 1003.13–14," and do not include 8 C.F.R. § 1003.15. *Id.* at *7; *see*

4   *also Diaz-Lastra*, 2019 WL 4394542, at *3 (same). However, the Government does not advocate

5   that interpretation of *Karingithi* in the instant case. On the contrary, the Government's argument

6   specifically hinges on the proposition that 8 C.F.R. §§ 1003.14 and 1003.15 are *also* not

7   jurisdictional. *E.g.*, Opp'n at 5 (arguing that "8 C.F.R. §§ 1003.14(a) and 1003.15 are claim-

8   processing rules, not jurisdictional ones"). As a general matter, the Court agrees that it would be

9   improper to needlessly "contort *Karingithi*" when "it is clear that *Karingithi* contemplates that

10  Section 1003.15 is jurisdictional." *Gutierrez-Ramirez*, 2019 WL 3346481, at *6.

11          Finally, in the course of its argument, the Government mentions various decisions from

12  "the Fourth, Fifth, Seventh, Tenth, and Eleventh Circuits" as persuasive authority for the

13  proposition that 8 C.F.R. § 1003.15(b) is not jurisdictional. Opp'n at 10. These cases undercut the

14  Government's argument, however. This is so because the authoring courts recognized that their

15  decisions contradicted *Karingithi*, and hence reached a conclusion contrary to Ninth Circuit law.

16  *See, e.g.*, *Perez-Sanchez v. United States Attorney Gen.*, 935 F.3d 1148, 1155 (11th Cir. 2019)

17  (listing the Ninth Circuit as a circuit that has "accepted the proposition that 8 C.F.R. § 1003.14

18  sets forth a jurisdictional rule"); *Cortez*, 930 F.3d at 359 (citing *Karingithi* as an example of a case

19  in which a court "treat[ed] § 1003.14(a) as though it implicates an immigration court's

20  adjudicatory authority or 'subject matter jurisdiction'"). This Court is bound by the case law of

21  the Ninth Circuit.

22          For this reason, it is also of no consequence that the BIA held the regulations to be "claim-

23  processing" in *Matter of Rosales Vargas*, 27 I. & N. Dec. 745 (BIA 2020). The Court is bound by

24  Ninth Circuit's determination that the regulations are jurisdictional. *See, e.g., Suchite-Ramirez*,

25  2019 WL 4396142, at *2 (explaining that argument that 8 C.F.R. § 1003.15(b)(6) is claim-

26  processing "directly contradicts the Ninth Circuit's reasoning in *Karingithi*, in which the Court

27  concluded that the regulatory requirements governing charging documents, including NTAs, are

28                                                  12

Case No. 19-CR-00184-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT

1  jurisdictional").

2       Accordingly, the Court agrees with Defendant that this Court is bound by *Karingithi*, and

3  *Karingithi* stands for the proposition that 8 C.F.R. § 1003.14(a) and 8 C.F.R. § 1003.15(b)(6) are

4  jurisdictional.[1] The Court proceeds to consider the Government's argument that Defendant's

5  "actual notice" of the "address of the Immigration Court where the Service will file" the NTA, 8

6  C.F.R. § 1003.15(b)(6), nonetheless remedied this jurisdictional defect.

7       **3. Defendant's Purported "Actual Notice" of the Address of the Immigration Court
        Did Not Vest the Immigration Court with Jurisdiction**

8       The Government asserts that even if the Court concludes that under C.F.R. § 1003.14(a)

9
10 and 8 C.F.R. § 1003.15(b)(6), the requirement that an NTA include the "address of the

   Immigration Court where the Service will file" the NTA is jurisdictional, the Court should still
11
   find that the Immigration Court had jurisdiction over removal proceedings in the instant case.
12
   Opp'n at 13.  According to the Government, "multiple documents" may be used to provide "the
13
   requisite notice under" 8 C.F.R. § 1003.15(b)(6).  *Id.* at 13–14.  Here, the Government asserts that
14
   two Notices of Hearing served on the Defendant provided Defendant with actual notice of the
15
   location at which the NTA was filed.  *Id.* at 13; Vargas Decl. ¶¶ 13, 14; August 31, 2017 NOH;
16
   September 20, 2017 NOH.  As Defendant notes, however, the Government's actual notice
17
   argument fails for legal and factual reasons.
18
        First, as a legal matter and as this Court and other courts have concluded, the regulations
19
   do not indicate that a Notice of Hearing that includes the information the NTA originally omitted
20
   cures a non-compliant NTA.  *Nunez-Romero*, 2020 WL 1139642, at \*8; *Gutierrez-Ramirez*, 2019
21
   WL 3346481, at \*7; *see also Ramos-Urias*, 2019 WL 1567526, at \*3("[T]he Court can find no
22
   regulatory support for the proposition that a notice of hearing cures a regulatorily-deficient NTA
23
   or can serve as a separate charging document.").  As a result, the Government's actual notice
24
   argument fails as a matter of law.
25

26
   _____
27 [1] In light of the controlling nature of *Karingithi*, the Court need not reach Defendant's argument
   that the government is judicially estopped from adopting the litigation position it adopts in the
   instant case.  Reply at 2.
28                                          13
   Case No. 19-CR-00184-LHK
   ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT

1    Second, as a factual matter, if "there is no evidence that Defendant's Notice of Hearing

2    was ever . . . filed with the Immigration Court," such a non-compliant Notice of Hearing cannot

3    cure a faulty Notice to Appear. *Gutierrez-Ramirez*, 2019 WL 3346481, at *7; *Nunez-Romero*,

4    2020 WL 1139642, at *8. This is so because "8 C.F.R. § 1003.14 states that 'jurisdiction vests

5    . . . when a charging document is filed with the Immigration Court by the Service.' Under this

6    plain language (and if the Notice of Hearing is akin to an amended charging document), the Notice

7    of Hearing would need to be filed with the Immigration Court." *Gutierrez-Ramirez*, 2019 WL

8    3346481, at *6 (internal alterations omitted).

9    In the instant case, the Government seeks to rely on the Notices of Hearing. However, just

10   as was the case in *Gutierrez-Ramirez* and *Nunez-Romero*, "there is no evidence that the Notice of

11   Hearing was ever filed with the Immigration Court," as would be required for it to independently

12   function as a kind of "amended charging document" under 8 C.F.R. § 1003.14. *Gutierrez-*

13   *Ramirez*, 2019 WL 334648, at *6; *Nunez-Romero*, 2020 WL 1139642, at *9. This issue "render[s]

14   the Notice of Hearing non-curative here." *Id.*

15   The Court therefore concludes that the Notices of Hearing did not cure the jurisdictional

16   defect caused by the NTA's violation of 8 C.F.R. § 1003.15(b). The Court therefore concludes

17   that the Immigration Court lacked jurisdiction to issue the September 2017 removal order. The

18   Court finally proceeds to consider whether Defendant satisfies the requirements of 8 U.S.C. §

19   1326(d).

20   **B. Defendant Satisfies the Requirements of 8 U.S.C. § 1326(d)**

21   The Court now analyzes the above findings in the context of 8 U.S.C. § 1326(d), which

22   sets forth three prongs that a defendant must establish to successfully collaterally attack his prior

23   removal order. "To satisfy the third prong—that the order was fundamentally unfair—the

24   defendant bears the burden of establishing both that the deportation proceeding violated his due

25   process rights and that the violation caused prejudice." *Raya-Vaca*, 771 F.3d at 1201 (internal

26   quotation marks, citation, and brackets omitted). Accordingly, the Government argues that

27   Defendant cannot satisfy the third prong of 8 U.S.C. § 1326(d). Opp'n at 16–18.

28   14

1     The Court notes that numerous district courts have held that the requirements of 8 U.S.C.

2     § 1326(d) do not apply to defendants who challenge the validity of a deportation order when the

3     Immigration Court lacked jurisdiction over the removal proceeding. *See, e.g.*, *Martinez-Aguilar*,

4     2019 WL 2562655, at *4 ("[B]ecause the Notice to Appear issued to Defendant was

5     jurisdictionally deficient, the subsequent removal order which caused Defendant to be deported

6     was invalid as issued without proper jurisdiction, and Defendant does not need to show that he

7     was prejudiced by the lack of jurisdiction before the Immigration Court."); *United States v.*

8     *Quijada-Gomez*, 360 F. Supp. 3d 1084, 1094 (E.D. Wash. 2018) ("[A] challenge to the

9     immigration court's jurisdiction need not comply with § 1326(d)'s limitations on collateral

10    attacks.").

11           United States District Judge Charles Breyer explained this conclusion in *United States v.*

12    *Arteaga-Centeno*, 353 F. Supp. 3d 897 (N.D. Cal. 2019), *vacated on other grounds by United*

13    *States v. Arteaga-Centeno*, 2019 WL 1995766. In *Arteaga-Centeno*, Judge Breyer explained that

14    for the purposes of 8 U.S.C. § 1326(d), there is a distinction between "jurisdictionally-invalid

15    orders and orders that are invalid for any other reasons." 353 F. Supp. 3d at 903. Judge Breyer

16    noted that Ninth Circuit precedent compels the conclusion "that if the order is void on its face for

17    want of jurisdiction, it is the duty of this and every other court to disregard it." *Id.* (internal

18    alteration and quotation marks omitted) (quoting *Wilson v. Carr*, 41 F.2d 704, 706 (9th Cir.

19    1930)). The Government's argument that 8 U.S.C. § 1326(d) applies "to jurisdictionally-invalid

20    orders, . . . is thus precluded by the Ninth Circuit's requirement that courts must disregard invalid

21    orders and that such orders are legal nullities." *Id.* (internal alteration and quotation marks

22    omitted) (quoting *Wilson*, 41 F.2d at 706). Simply put, a Defendant's challenge to a

23    jurisdictionally deficient removal order "is not a 'collateral challenge' to his deportation order,

24    because there is no removal order to be collaterally attacked." *Id.*

25           In the instant case, the Court need not resolve the question of whether the foregoing

26    analysis is correct because Defendant meets the requirements of 8 U.S.C. § 1326(d). The Court

27    finds that the September 2017 removal order was "fundamentally unfair" under 8 U.S.C.

28
                                                        15

Case No. 19-CR-00184-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT

1    § 1326(d)(3).  First, because jurisdiction never vested in the Immigration Court, the September

2    2017 removal order violated Defendant's due process rights.  Courts in this circuit have held that

3    when the Immigration Court enters a removal order without jurisdiction over a defendant, the

4    Immigration Court violates the defendant's due process rights.  *See, e.g.*, *United States v. Erazo-*

5    *Diaz*, No. 18-CR-00311-TUC, 2018 WL 63222168, at \*5 (D. Ariz. Dec. 4, 2018) ("The Court

6    agrees that the order of removal is fundamentally unfair under § 1326(d)(3).  Because it was

7    entered without jurisdiction, it was a violation of Defendant's due process rights."); *see also*

8    *United States v. Rodriguez-Rosa*, No. 18-CR-00079-MMD, 2018 WL 6635286, at \*4 (D. Nev.

9    Dec. 11, 2018) (finding fundamental unfairness where the immigration court did not have

10   jurisdiction).

11        Second, in light of the defective NTA, Defendant was prejudiced because he was

12   "removed when he should not have been."  *See United States v. Aguilera-Rosa*, 769 F.3d 626, 630,

13   636 (9th Cir. 2014); *see also United States v. Camacho-Lopez*, 540 F.3d 928, 930 (9th Cir. 2006)

14   ("Camacho was removed when he should not have been and clearly suffered prejudice.").  The

15   Government attempts to distinguish the foregoing case law, and argues that the case law

16   concerned situations outside the context of defective NTAs.  Opp'n at 17–18.  However, the Ninth

17   Circuit's holdings are readily applicable to the context of a jurisdictionally defective NTA.  As the

18   Ninth Circuit has explained, even if the Immigration Court would have otherwise been able to

19   remove Defendant "through a formal removal proceeding" that was jurisdictionally sound,

20   Defendant's "removal on illegitimate grounds is enough to show prejudice."  *United States v.*

21   *Ochoa-Oregel*, 904 F.3d 682, 686 (9th Cir. 2018).  Having shown a due process violation and

22   prejudice, the Court concludes that Defendant has met his burden to show "fundamental

23   unfairness."

24        In the instant case, Defendant has demonstrated a violation of his due process rights.

25   Accordingly, Defendant "need not show exhaustion of administrative remedies or that he was

26   denied judicial review pursuant to § 1326(d)(1) and (2)."  *Ramos-Urias*, 348 F. Supp. 3d at 1037;

27   *see also Gutierrez-Ramirez*, 2019 WL 3346481, at \*8 ("Because Defendant has demonstrated that

28

16

Case No. 19-CR-00184-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT

1    his removal was fundamentally unfair, 'he need not show exhaustion of administrative remedies or

2    that he was denied judicial review pursuant to § 1326(d)(1) and (2).'"), *Lazaro v. Mukasey*, 527

3    F.3d 977, 980 (9th Cir. 2008) ("A petitioner is entitled to relief from a defective [Notice to

4    Appear] if he 'show[s] that the Immigration Court lacked jurisdiction'" (citation omitted)); *United*

5    *Farm Workers of Am., AFL-CIO v. Ariz. Agric. Emp't Relations Bd.*, 669 F.2d 1249, 1253 (9th

6    Cir. 1982) ("Exhaustion of administrative remedies is not required where . . . the administrative

7    proceedings themselves are void."); *Reese Sales Co. v. Hardin*, 458 F.2d 183, 187 (9th Cir. 1972)

8    (explaining that exhaustion of administrative remedies is not required where "the agency lacks

9    power or jurisdiction to proceed").

10       In sum, Defendant has shown that Defendant is entitled to relief. The September 2017

11    removal order is void because the Immigration Court lacked jurisdiction over the removal

12    proceedings. As the September 2017 removal order is void, the Court finds that the Government

13    cannot establish a predicate element—the prior removal or deportation of Defendant—of the sole

14    offense in the Indictment. *See Raya-Vaca*, 771 F.3d at 1201. Accordingly, the Court GRANTS

15    the motion to dismiss the Indictment.

16    **IV.    CONCLUSION**

17       For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss the

18    Indictment.

19    **IT IS SO ORDERED.**

20    Dated: April 8, 2020

21

22                                 LUCY H. KOH
                                   United States District Judge

23

24

25

26

27

28

Case No. 19-CR-00184-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT