UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>MANUEL CEJA-MELCHOR,<br><br>    Defendant. | Case No. 19-CR-00184-LHK<br><br>**ORDER GRANTING MOTION FOR RECONSIDERATION; VACATING THE APRIL 8, 2020 ORDER AND JUDGMENT; REOPENING THE CASE; AND DENYING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT**<br><br>Re: Dkt. No. 48 |
|---|---|

On April 8, 2020, the Court granted Defendant Manuel Ceja-Melchor's ("Defendant") motion to dismiss Defendant's 8 U.S.C. § 1326 indictment. ECF No. 33. Before the Court is the Government's motion for reconsideration. ECF No. 48 ("Mot."). Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS the Government's motion for reconsideration, ECF No. 48; VACATES the April 8, 2020 Order and the Judgment, ECF Nos. 33 & 34; REOPENS the case; and DENIES Defendant's motion to dismiss the indictment, ECF No. 26.

**I.    BACKGROUND**

   **A. Factual Background**

1

Case No. 19-CR-00184-LHK
ORDER GRANTING MOTION FOR RECONSIDERATION; VACATING THE APRIL 8, 2020 ORDER AND JUDGMENT; REOPENING THE CASE; AND DENYING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT

Defendant, a citizen of Mexico, entered the United States without inspection and, on or about June 13, 1991, adjusted his status to that of a lawful permanent resident. ECF No. 28-3 ("NTA"). Defendant has multiple criminal convictions. On March 5, 2012, Defendant was convicted of transportation of a controlled substance in violation of California Health and Safety Code Section 11352(a). *Id*; *see also* ECF No. 28 ("Vargas Decl."), at ¶ 7.

On December 19, 2012, after the Government received a lead on Defendant and performed a criminal history check, Deportation Officer David Vargas prepared a Form I-862, Notice to Appear ("NTA"), charging Defendant with removability under sections 237(a)(2)(A)(iii) and 237(a)(2)(B)(i) of the Immigration and Nationality Act ("INA"). Vargas Decl. ¶¶ 7–8; NTA at 3. The NTA did not identify the address of the immigration court at which the notice to appear ("NTA") would be filed. NTA at 1. Instead, under the text, "YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:" the NTA was left blank. *Id.*

On December 20, 2012, Defendant was taken into custody. Vargas Decl. ¶ 9. Defendant was issued an Order of Release on Recognizance after the Government learned that numerous detention facilities had no available bed space, and Defendant promised not to violate any local, State, or Federal laws or ordinances. *Id*. ¶ 10.

In 2015, Defendant was arrested for possession of a controlled substance, possession or purchase of a cocaine base for sale, cruelty to a child with possible injury, obstruction and destroying of evidence, and other related charges. Mot. at 9. Defendant was ultimately convicted of obstruction and destroying of concealed evidence. *Id.* Later in 2015, Defendant was arrested for possession for sale of a controlled substance. *Id.*

On or about June 17, 2017, Defendant was arrested by the Salinas Sheriff's Department for possession and sale of a controlled substance, carrying loaded firearms, obstructing a public officer, driving with a suspended license, and a probation violation. Vargas Decl. ¶ 12. Due to Defendant's failure to comply with the terms of his release, Defendant was taken back into

2

custody on August 11, 2017. *Id.*

On August 31, 2017, Defendant was issued a Notice of Hearing ("NOH") that informed Defendant that he was scheduled for a custody hearing at 1:00 p.m. on September 20, 2017 at the Immigration Court located at 630 Sansome Street, 4th Floor, Courtroom 2, San Francisco, CA 94111. *See* ECF No. 28-9 ("August 31, 2017 NOH"). At the September 20, 2017 hearing, Defendant's counsel requested a continuance to discuss Defendant's options and confirm the course of action that Defendant wanted to pursue. Vargas Decl. ¶ 9. The Immigration Judge ("IJ") granted a one-week continuance to allow Defendant's counsel to more fully discuss with Defendant the ramifications of the available options and issued a Notice of Hearing before the Immigration Court located at 630 Sansome Street, 4th Floor, Courtroom 2, San Francisco, CA 94111. *Id*, *see also* ECF No. 28-10 ("September 20, 2017 NOH").

At the September 27, 2017 hearing, the IJ asked Defendant's counsel "Are you ready to plead today?" Defendant's counsel replied "Your Honor, I have addressed this matter with my client. I talked to him extensively. I talked to the wife. And my client is asking that the Court enter an Order so that he can be removed to Mexico."). ECF No. 65 ("Exhibit F"), at 1. The IJ then asked Defendant's counsel if Defendant wanted to be considered for voluntary departure. Defendant's counsel stated that Defendant did want to be considered for voluntary departure, as long as Defendant would still be removed quickly. *Id.* at 4. Defendant's counsel stated "With voluntary departure, the government is still going to be removing him as quickly as possible, correct? That's his concern." *Id.*

The IJ then asked the Government's position on voluntary departure. *Id.* at 6. The Government stated that it opposed voluntary departure on account of Defendant's criminal record. *Id.* The IJ then asked Defendant's counsel if she would like to provide any further argument in favor of voluntary departure. *Id.* at 7. Defendant's counsel stated that she would rest on the record already provided. *Id.* The IJ then denied voluntary departure on account of Defendant's extensive criminal history. *Id.* Defendant's counsel then waived the right to appeal and the IJ ordered

3

Case No. 19-CR-00184-LHK
ORDER GRANTING MOTION FOR RECONSIDERATION; VACATING THE APRIL 8, 2020 ORDER AND JUDGMENT; REOPENING THE CASE; AND DENYING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT

Defendant removed to Mexico. *Id.*

The Government alleges that after Defendant was removed to Mexico, Defendant illegally re-entered the United States. ECF No. 1 at ¶ 10. On April 2, 2019, Defendant was detained and determined to be in the United States without the permission of the Attorney General or the Secretary of Homeland Security. *Id.* at ¶ 8.

**B. Procedural History**

On April 18, 2019, a grand jury in the Northern District of California returned an indictment that charged Defendant with one count of violating 8 U.S.C. § 1326(a), Illegal Reentry of a Removed Alien. ECF No. 1 ("Indictment"). Specifically, the grand jury charged as follows: "On or about April 4, 2019, in Monterey County in the Northern District of California, the [D]efendant, . . . an alien, previously having been excluded, deported and removed from the United States on or about July 6, 2018, was found in the United States, with the Attorney General of the United States and the Secretary for Homeland Security not having expressly consented to a re-application by the [D]efendant for admission into the United States." *Id.* at 1.

On January 26, 2020, Defendant filed a motion to dismiss the indictment. ECF No. 26 ("MTD"). On March 11, 2020, the Government opposed the motion, ECF No. 27, and on April 1, 2020, Defendant filed a reply, ECF No. 32.

On April 8, 2020, the Court granted Defendant's motion to dismiss the indictment. ECF No. 33. Relying on *Karingithi v. Whitaker*, 913 F.3d 1158 (9th Cir. 2019), the Court found that the Immigration Judge ("IJ") lacked jurisdiction over Defendant's removal proceedings because Defendant's NTA for the removal hearing lacked the address of the Immigration Court where the NTA would be filed. *Id.* On April 8, 2020, the Court entered judgment in favor of Defendant. ECF No. 34.

On May 5, 2020, the Ninth Circuit issued its ruling in *Aguilar Fermin v. Barr*, 958 F.3d 887 (9th Cir.), *cert. denied sub nom. Fermin v. Barr*, 141 S. Ct. 664 (2020), in which the Ninth Circuit held that an IJ has jurisdiction over removal proceedings even if the NTA lacked the

4

1  address of the immigration court.

2  In light of this new authority, the Government filed a motion for leave to file a motion for
3  reconsideration on May 7, 2020. ECF No. 36. On July 10, 2020, the Court granted leave to file a
4  motion for reconsideration. ECF No. 45.

5  On August 26, 2020, the Government filed the instant motion for reconsideration. ECF No.
6  48 ("Mot."). Defendant's counsel then withdrew from this case and the Court appointed new
7  counsel for Defendant. ECF Nos. 49, 52. After delays resulting from that change in counsel,
8  Defendant filed an opposition on May 3, 2021. ECF No. 66 ("Opp."). On June 1, 2021, the
9  Government filed a reply. ECF No. 69 ("Reply").

## II.   LEGAL STANDARD

### A. Motion for Reconsideration

"[M]otions for reconsideration in criminal cases are governed by the rules that govern equivalent motions in civil proceedings." *United States v. Mendez*, 2008 WL 2561962, at *2 (C.D. Cal. June 25, 2008) (*citing United States v. Hector*, 368 F. Supp. 2d 1060, 1063 (C.D. Cal. 2005), *rev'd on other grounds*, 474 F.3d 1150 (9th Cir. 2007)). In ruling on motions for reconsideration in criminal cases, courts have relied on the standards governing Rule 59(e) and Rule 60(b) of the Federal Rules of Civil Procedure. *See id.* (applying the standard governing Rule 60(b)); *Hector*, 368 F.Supp.2d at 1063 (analyzing a reconsideration motion as a Rule 59(e) motion). Courts generally apply the same analysis under both rules. *See Fidelity Fed. Bank, FSB v. Durga Ma Corp.*, 387 F.3d 1021, 1023 (9th Cir. 2004) (discussing Rule 60(b)); *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1441 (9th Cir. 1991) (discussing Rule 59(e)).

Under Rule 59(e), "reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) (citation omitted). Under Rule 60(b), reconsideration is permitted upon a showing of: "(1) mistake, inadvertence, surprise, or excusable

5

Case No. 19-CR-00184-LHK
ORDER GRANTING MOTION FOR RECONSIDERATION; VACATING THE APRIL 8, 2020 ORDER AND JUDGMENT; REOPENING THE CASE; AND DENYING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT

neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b). Relief under the sixth category "requires a finding of 'extraordinary circumstances.'" *Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985) (quoting *McConnell v. MEBA Med. & Benefits Plan*, 759 F.2d 1401, 1407 (9th Cir. 1985)).

### B. Motion to Dismiss Indictment

Under Federal Rule of Criminal Procedure 12(b)(3)(B)(v), a defendant may move to dismiss an indictment on the ground that the indictment "fail[s] to state an offense." In considering a motion to dismiss an indictment, a court must accept the allegations in the indictment as true and "analyz[e] whether a cognizable offense has been charged." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). "In ruling on a pre-trial motion to dismiss an indictment for failure to state an offense, the district court is bound by the four corners of the indictment." *Id.* A motion to dismiss an indictment can be determined before trial "if it involves questions of law rather than fact." *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir.), *cert. denied*, 478 U.S. 1007 (1986).

### C. Collateral Attack on a Deportation

"For a defendant to be convicted of illegal reentry under 8 U.S.C. § 1326, the Government must establish that the defendant left the United States under order of exclusion, deportation, or removal, and then illegally reentered." *United States v. Raya-Vaca*, 771 F.3d 1195, 1201 (9th Cir. 2014) (internal quotation marks and citation omitted). "A defendant charged under § 1326 has a due process right to collaterally attack his removal order because the removal order serves as a predicate element of his conviction." *Id.* (internal quotation marks and citation omitted).

To demonstrate that a prior deportation cannot serve as the basis for an indictment for illegal reentry, 8 U.S.C. § 1326(d) requires that a defendant "demonstrate that (1) he exhausted the administrative remedies available for seeking relief from the predicate removal order; (2) the deportation proceedings 'improperly deprived [him] of the opportunity for judicial review'; and (3) the removal order was 'fundamentally unfair.'" *Id.* (quoting 8 U.S.C. § 1326(d)) (brackets in original). "To satisfy the third prong—that the order was fundamentally unfair—the defendant bears the burden of establishing both that the deportation proceeding violated his due process rights and that the violation caused prejudice." *Id.* (internal quotation marks, citation, and brackets omitted).

## III.  DISCUSSION

The Court's April 8, 2020 Order granted Defendant's motion to dismiss the indictment based on Defendant's argument that the United States Department of Homeland Security's failure to file a proper Notice to Appear ("NTA") deprived the Immigration Court of jurisdiction to remove Defendant. *See* ECF No. 33. The April 8, 2020 Order therefore did not consider Defendant's other two arguments in the motion to dismiss: (1) that the Court should dismiss the indictment because Defendant received ineffective assistance of counsel; and (2) because the IJ failed to advise Defendant of his eligibility for discretionary relief. MTD at 8–10.

The Government now asks the Court to reconsider the Court's April 8, 2020 Order in light of the Ninth Circuit's recent decision in *Aguilar Fermin*, contending that the Immigration Court in the instant case was vested with jurisdiction over the removal proceedings despite the defective NTA. Mot. at 3–5. Additionally, the Government addresses Defendant's second and third arguments from the original motion to dismiss. *Id.* at 5–11.

The Court first explains the intervening Ninth Circuit decisions in *Aguilar Fermin* and *United States v. Bastide-Hernandez*, 3 F.4th 1193 (9th Cir. 2021). The Court then considers whether these Ninth Circuit decisions establish that the Immigration Court in the instant case was vested with jurisdiction over the removal proceedings despite the defective NTA. Because the

7
Case No. 19-CR-00184-LHK
ORDER GRANTING MOTION FOR RECONSIDERATION; VACATING THE APRIL 8, 2020 ORDER AND JUDGMENT; REOPENING THE CASE; AND DENYING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT

Court finds that these recent decisions establish that the Immigration Court was vested with jurisdiction over the removal proceedings, the Court then considers Defendant's second and third arguments to dismiss the indictment.

### A. Jurisdiction

The Court first examines the Ninth Circuit's recent decisions in *Aguilar Fermin* and *Bastide-Hernandez*. Next, the Court addresses Defendant's argument regarding the application of the United States Supreme Court's recent decision in *Niz-Chavez v. Garland*, 141 S. Ct. 1474 (2021). Finally, the Court considers whether the defective NTA vested the Immigration Court with jurisdiction in the instant case.

#### 1. *Aguilar Fermin* and *Bastide-Hernandez*

Subsequent to this Court's Order granting Defendant's motion to dismiss the indictment, the Ninth Circuit issued a decision in *Aguilar Fermin* that further clarified whether a defective NTA that lacks the requisite date, time, and address of the removal hearing deprives the immigration court of jurisdiction. 958 F.3d at 887. The Ninth Circuit held in *Aguilar Fermin* that a NTA that lacks the date, time, and address of the immigration court does not deprive the immigration court of jurisdiction over the case if that information is provided at a later date. *Id.* at 895 ("We thus hold that there was no error in the BIA's determination that the lack of time, date, and place in the NTA sent to Aguilar did not deprive the immigration court of jurisdiction over her case.").

In *Bastide-Hernandez*, decided after *Aguilar Fermin*, the Ninth Circuit confirmed that "the jurisdiction of the immigration court vests upon the filling of the NTA, even one that does not at that time inform the alien of the time, date, and location of the hearing." *Bastide-Hernandez*, 3 F.4th at 1196. In reaching this holding, the Ninth Circuit reasoned that "[i]f this were not the case, upon the filing of an NTA jurisdiction would vest, but then would unvest if the NTA lacked required time, date, and location information, only to once again revest if a subsequent curative NOH provided that missing information." *Id.* The Ninth Circuit explained that "[j]urisdiction, for

8

Case No. 19-CR-00184-LHK
ORDER GRANTING MOTION FOR RECONSIDERATION; VACATING THE APRIL 8, 2020 ORDER AND JUDGMENT; REOPENING THE CASE; AND DENYING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT

all its subtle complexities is not ephemeral. It either exists or it does not." *Id.* Thus, the Ninth Circuit concluded that "[u]nder *Karingithi* and *Aguilar Fermin* . . . when an NTA is filed, jurisdiction exists and vests with the immigration court." *Id.*

As such, *Bastide-Hernandez* makes clear that a defective NTA does not deprive the immigration court of jurisdiction. Rather, jurisdiction vests when the NTA is filed, even if that NTA lacks the requisite time, date, and location information. *Id*. Moreover, after the Ninth Circuit's decision in *Bastide-Hernandez,* district courts in this circuit have consistently found that "a defective NTA does not affect jurisdiction." *USA v. Cardiel-Ruiz*, 2021 WL 1375986, at *4 (N.D. Cal. Apr. 12, 2021); *see also United States v. Castaneda-Nicolas*, 2021 WL 2349345, at *5 (E.D. Wash. Apr. 21, 2021) (rejecting defendant's argument that the immigration court lacked jurisdiction over defendant's removal hearing because defendant did not receive a curative NOH).

**2. *Niz-Chavez***

However, Defendant contends that the Supreme Court's recent decision in *Niz-Chavez v. Garland*, "undermines the holding of *Bastide-Hernandez* and *Aguilar Fermin*." Opp. at 9. Defendant's argument lacks merit.

*Niz-Chavez* does not concern whether a defective NTA deprives the immigration court of jurisdiction over removal proceedings. Rather, *Niz-Chavez* concerns the so-called "time-stop rule," and the Ninth Circuit has made clear that cases involving the time-stop rule have no bearing on the jurisdiction of the immigration court. *See Aguilar Fermin*, 958 F.3d at 893 (explaining that decisions regarding the time-stop rule under 8 U.S.C. § 1229b(d)(1)(A) have no bearing on the jurisdiction of the immigration court). Indeed, the majority opinion in *Niz-Chavez* never references jurisdiction or the jurisdictional requirements of the immigration court. Moreover, *Bastide-Hernandez* was decided after *Niz-Chavez*, which confirms that the Ninth Circuit concluded that *Niz-Chavez* had no application to the question of whether a defective NTA deprives the immigration court of jurisdiction. In sum, *Niz-Chavez* has no bearing on whether the Immigration Court in the instant case had jurisdiction over Defendant's removal proceedings.

9
Case No. 19-CR-00184-LHK
ORDER GRANTING MOTION FOR RECONSIDERATION; VACATING THE APRIL 8, 2020 ORDER AND JUDGMENT; REOPENING THE CASE; AND DENYING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT

### 3. Under the Ninth Circuit's recent decision in *Bastide-Hernandez*, the defective NTA vested the Immigration Court with jurisdiction.

The Government, relying on *Aguilar Fermin*, argues that the Immigration Court had jurisdiction over Defendant's removal proceedings in the instant case because "any issues raised by the incomplete NTA were remedied by subsequent Notices of Hearing." Mot. at 3–4. In response, Defendant argues that the Government conflates the NTA's lack of time, date, and location of the hearing with the address of the Immigration Court where the NTA would be filed. Opp at 9. Defendant argues that there is no evidence in the record that a subsequent NOH provided Defendant with the address of the Immigration Court in violation of § 1003.15(b)(6). *Id.*

The Court first considers whether the subsequent NOH was curative of the defective NTA. After finding that the Government has not established that the subsequent NOH was curative of the defective NTA, the Court next considers whether the defective NTA deprived the Immigration Court of jurisdiction.

First, contrary to the Government's argument in the motion for reconsideration, the Government has not established that a subsequent NOH in the instant case was curative of the defective NTA. In *Aguilar Fermin*, the Ninth Circuit held that defects in an NTA, including a missing address, may be cured through a later hearing notice. *See Aguilar Fermin*, 958 F.3d at 895 (explaining that "an omission of some of the information required by § 1003.14(a) and § 1003.15(b)(6) is not fatal"). Here, the Government contends that "after the initial NTA was filed, the Immigration Court issued Notices of Hearing specifying a date, time, and address for Defendant's hearings," and listed "the address of the Immigration Court at 630 Sansome Street, 4th Floor, Courtroom 2, San Francisco, CA 94111." Mot. at 5 (citing ECF No. 27 at 2–3; ECF No. 28 at ¶¶ 13-14, Exs. I–J). The Government contends that "Defendant's immigration attorney confirmed that she received those hearing notices, and that she and Defendant were present for all his hearings." *Id.*

However, the address of the location of the hearing is not always identical to the location of the Immigration Court where the NTA will be filed, which must be included in the NTA

10

pursuant to § 1003.15(b)(6). *See Bastide-Hernandez*, 3 F.4th at 1199 (M. Smith, concurring) ("The address of the court where the NTA will be filed may or may not be the same as the place where the hearing will be held; the two regulations thus refer to different information."). Accordingly, the Government has not established that the NOH cured the defective NTA.

However, although the Government has not established that the NTA's omission of the information required by § 1003.15(b)(6) was cured by a subsequent NOH, the Court finds that under the Ninth Circuit's decision in *Bastide-Hernandez*, a curative NOH is not necessary to vest jurisdiction in the Immigration Court. In no uncertain terms, the Ninth Circuit stated: "Jurisdiction, for all its subtle complexities, is not ephemeral. It either exists or it does not. Under *Karingithi* and *Aguilar Fermin*, we now hold that when an NTA is filed, jurisdiction exists and vests with the immigration court." *Bastide-Hernandez*, 3 F.4th at 1196. The Ninth Circuit further stated that "a defective NTA does not affect jurisdiction." *Id.* Thus, *Bastide-Hernandez* makes clear that an NTA vests the Immigration Court with jurisdiction when the NTA is filed, regardless of the NTA's defects. *Id; Cardiel-Ruiz*, 2021 WL 1375986, at *4 (same).

Therefore, following the Ninth Circuit's holding in *Bastide-Hernandez*, the Court finds that in the instant case, Defendant's defective NTA vested the Immigration Court with jurisdiction over Defendant's removal proceedings when the NTA was filed. Thus, Defendant's indictment may not be dismissed for lack of jurisdiction.

Accordingly, in light of the intervening change in controlling law, the Court GRANTS in part the Government's motion for reconsideration. Specifically, the Court finds that the Court's April 8, 2020 Order granting Defendant's motion to dismiss the indictment on the basis that the IJ lacked jurisdiction over Defendant's removal proceeding was incorrectly decided in light of the Ninth Circuit's subsequent decision in *Bastide-Hernandez*. Therefore, the Court VACATES the April 8, 2020 Order and the Judgment, and REOPENS the case. However, the Court's April 8, 2020 Order did not consider the second and third arguments in Defendant's motion to dismiss. The Court now turns to those arguments.

### B. Collateral Attack on a Deportation

To establish that a prior deportation cannot serve as the basis for an indictment for illegal reentry, 8 U.S.C. § 1326(d) requires that a defendant demonstrate that he meets three requirements: "(1) he exhausted the administrative remedies available for seeking relief from the predicate removal order; (2) the deportation proceedings 'improperly deprived [him] of the opportunity for judicial review'; and (3) the removal order was 'fundamentally unfair.'" *Raya-Vaca*, 771 F.3d at 1201 (quoting 8 U.S.C. § 1326(d)) (brackets in original).

Defendant contends that he has demonstrated a violation of his due process rights, and accordingly "need not show exhaustion of administrative remedies or that he was denied judicial review." Opp. at 12–13 (citation omitted). For support, Defendant points to this Court's April 8, 2020 Order granting Defendant's motion to dismiss the indictment. *Id.*

However, subsequent to this Court's Order, the United States Supreme Court clarified in *United States v. Palomar-Santiago* that each of the requirements under 8 U.S.C. § 1326(d) is mandatory. 141 S. Ct. 1615, 1620–1621 (2021) ("The requirements are connected by the conjunctive 'and,' meaning defendants must meet all three."). The United States Supreme Court further stated that "[w]hen Congress uses mandatory language in an administrative exhaustion provision, a court may not excuse a failure to exhaust." *Id.* (internal quotation marks and citation omitted). The United States Supreme Court's decision in *Palomar-Santiago* thus "reversed the precedent of [the Ninth Circuit] that 'excused [defendants] from proving the first two requirements' of § 1326(d) if they were 'not convicted of an offense that made [them] removable.'" *Bastide-Hernandez*, 3 F.4th at 1196 (quoting *United States v. Ochoa*, 861 F.3d 1010, 1015 (9th Cir. 2017) (second and third alterations in original)).

Accordingly, Defendant must meet all three requirements of § 1326(d) to prevail on his collateral attack on the deportation. Defendant must demonstrate that "(1) he exhausted the administrative remedies available for seeking relief from the predicate removal order; (2) the deportation proceedings 'improperly deprived [him] of the opportunity for judicial review'; and

12

1  (3) the removal order was 'fundamentally unfair.'" *Raya-Vaca*, 771 F.3d at 1201 (quoting 8

2  U.S.C. § 1326(d) (alteration in original)).

3        The Court first considers whether Defendant has demonstrated that he exhausted the

4  administrative remedies available to him in compliance with § 1326(d)(1). Because the Court

5  finds that Defendant has not demonstrated that he exhausted his administrative remedies, the

6  Court need not decide whether Defendant was deprived of the opportunity for judicial review or

7  whether the deportation proceedings were fundamentally unfair.

### 1. Defendant has not adequately established that he exhausted all administrative remedies available for seeking relief from the removal order

Defendant does not dispute that he waived his right to appeal to the BIA and therefore failed to exhaust his administrative remedies. However, Defendant argues that he has nevertheless satisfied the exhaustion requirement of § 1326(d)(1) because he was deprived of his right to appeal to the BIA for two reasons. First, Defendant argues that the IJ failed to inform Defendant that he was eligible for voluntary departure. MTD at 8. Second, Defendant argues that he failed to pursue voluntary departure and appeal his removal order to the BIA as a result of ineffective assistance of counsel. *Id.* at 8. The Court first explains the factual background in this case. The Court then addresses Defendant's two arguments in turn.

#### a. Removal Proceedings

The Court begins by briefly explaining the factual background of the removal proceedings in this case.

On March 5, 2012, Defendant was convicted of transportation of a controlled substance in violation of California Health and Safety Code Section 11352(a). Vargas Decl. ¶ 7. On December 19, 2012, after the Government received a lead on Defendant and performed a criminal history check, Deportation Officer David Vargas prepared a NTA, charging Defendant with removability under sections 237(a)(2)(A)(iii) and 237(a)(2)(B)(i) of the INA. Vargas Decl. ¶¶ 7–8; NTA at 3.

On December 20, 2012, Defendant was taken into custody. Vargas Decl. ¶ 9. Defendant

1   was issued an Order of Release on Recognizance after the Government learned that numerous

2   detention facilities had no available bed space, and Defendant promised not to violate any local,

3   State, or Federal laws or ordinances. *Id.* ¶ 10.

4         In 2015, Defendant was arrested for possession of a controlled substance, possession or

5   purchase of a cocaine base for sale, cruelty to a child with possible injury, obstruction and

6   destroying of evidence, and other related charges. Mot. at 9. Defendant was ultimately convicted

7   of obstruction and destroying of concealed evidence. *Id.* Later in 2015, Defendant was arrested for

8   possession for sale of a controlled substance. *Id.*

9         On or about June 17, 2017, Defendant was arrested by the Salinas Sheriff's Department for

10  possession and sale of a controlled substance, carrying loaded firearms, obstructing a public

11  officer, driving with a suspended license, and a probation violation. Vargas Decl. ¶ 12. Due to

12  Defendant's failure to comply with the terms of his release, Defendant was taken back into

13  custody on August 11, 2017. *Id.*

14        On August 31, 2017, Defendant was issued a NOH that informed Defendant that he was

15  scheduled for a custody hearing at 1:00 p.m. on September 20, 2017. The IJ held a removal

16  hearing on September 20, 2017. Exhibit E at 1. At that hearing, Defendant's counsel requested a

17  continuance to further discuss the form of relief that Defendant wished to pursue. *Id.* at 2. The IJ

18  granted a one-week continuance to allow Defendant's counsel to more fully discuss with

19  Defendant the ramifications of the available options. *Id.*

20        At the subsequent September 27, 2017 hearing, Defendant's counsel began by stating that

21  "I have addressed this matter with my client. I've talked to him extensively. I've talked to the

22  wife. And my client is asking that the court enter an order so that he can be removed to Mexico."

23  ECF No. 65 ("Exhibit F"), at 1. The IJ then asked Defendant's counsel: "Does your client want me

24  to consider voluntary departure?" *Id.* at 3. Defendant's counsel stated that her client did want to be

25  considered for voluntary departure, but that Defendant was primarily concerned with being

26  removed as quickly as possible. *Id.* at 4. Defendant's counsel stated "With voluntary departure, the

27  14

United States District Court
Northern District of California

government is still going to be removing him as quickly as possible, correct? That's his concern." *Id.*

The IJ then asked the Government's position on voluntary departure. *Id.* at 6. The Government stated that it opposed voluntary departure on account of Defendant's criminal record. *Id.* The IJ then asked Defendant's counsel if she would like to provide any further argument in favor of voluntary departure. *Id.* at 7. Defendant's counsel stated that she would rest on the record already provided. *Id.* The IJ then denied voluntary departure on account of Defendant's extensive criminal history. *Id.* Defendant's counsel then waived the right to appeal and the IJ ordered Defendant removed to Mexico. *Id.*

### b. The IJ Considered Defendant for Voluntary Departure

Defendant first argues that he has exhausted his administrative remedies because the IJ failed to inform Defendant that he was eligible to be considered for voluntary departure and denied Defendant the opportunity to apply for voluntary departure. MTD at 10. Below, the Court outlines Ninth Circuit law regarding voluntary departure. The Court then explains that the IJ in the instant case provided Defendant with the required opportunity to apply for voluntary departure.

"In applying § 1326(d)," the Ninth Circuit has held that an IJ breaches his or her obligation to "'inform the alien of his or her apparent eligibility to apply for'" relief from removal and to "'afford the alien an opportunity to make application during the hearing'" when the IJ "either fails to give the alien any information about the existence of relief . . . or erroneously tells the alien that no relief is possible." *United States v. Gonzalez-Flores*, 804 F.3d 920, 926 (9th Cir. 2015) (quoting 8 C.F.R. § 1240.11(a)(2)). An IJ may also breach his or her obligation "by stating that the alien is eligible for relief, but immediately negating that statement so that it is as if he was told that he did not qualify . . . which puts the alien in the same position as one who is never made aware that he has a right to seek relief." *Id.* (citation omitted). "An IJ's failure to inform the alien that he is eligible for a certain type of relief [] satisfies § 1326(d)(1) and (d)(2), because an alien who is not made aware of his or her apparent eligibility for relief has had no meaningful opportunity to

15

appeal the removal and seek such relief." *United States v. Gonzales-Villalobos*, 724 F.3d 1125, 1130 (9th Cir. 2013) (internal citations and quotation marks omitted).

Despite Defendant's claim that the IJ did not inform Defendant that he was eligible for voluntary departure and denied Defendant the opportunity to apply for voluntary departure, the September 27, 2017 hearing transcript plainly contradicts this claim. The hearing transcript makes clear that the IJ in the instant case did not breach his obligation "to inform the alien of his or her apparent eligibility to apply for" relief from removal or to "afford the alien an opportunity to make application during the hearing." *Gonzalez-Flores*, 804 F.3d at 926. Rather than "erroneously tell[ing] the alien that no relief [was] possible," *id.*, the IJ specifically asked Defendant's attorney during the September 27, 2017 hearing: "Does your client want me to consider voluntary departure?" Exhibit F at 3–4. In response, Defendant's counsel stated that Defendant wanted to be considered for voluntary departure. *Id.* at 4.

Nor did the IJ breach his obligation "by stating that [Defendant was] eligible for relief, but immediately negating that statement so that it is as if he was told that he did not qualify . . . which puts the alien in the same position as one who is never made aware that he has a right to seek relief." *Gonzalez-Flores*, 804 F.3d at 926. Rather, the IJ asked Defendant's counsel if Defendant wanted to be considered for voluntary departure. Exhibit F at 3–4. When Defendant's counsel stated that Defendant wanted to be considered for voluntary departure, the IJ asked Defendant's counsel if Defendant's counsel wanted to provide any further arguments or evidence in support of voluntary departure. *Id.* When Defendant's counsel indicated that Defendant rested on the record already submitted, the IJ asked the Government for its position on voluntary departure. *Id.* After considering the record, the IJ denied voluntary departure. *Id.*

Accordingly, after reviewing the hearing transcript, there is no basis to find that the IJ failed "to inform [Defendant] of his [] apparent eligibility to apply for" relief from removal or to "afford [Defendant] an opportunity to make application during the hearing." *Gonzalez-Flores*, 804 F.3d at 926. The IJ asked Defendant whether he wanted to be considered for voluntary departure

16

and then considered Defendant's application for voluntary departure. This satisfied the IJ's requirements under Ninth Circuit law. Therefore, Defendant has not satisfied § 1326(d)(1)'s exhaustion requirement because the IJ properly considered Defendant for voluntary departure.

### c. Ineffective Assistance of Counsel

Defendant next argues that he has satisfied the requirements of § 1326(d) because Defendant received ineffective assistance of counsel during Defendant's removal proceedings. Specifically, Defendant contends that Defendant's counsel was "ineffective because she failed to explain [Defendant's] eligibility for voluntary departure and the benefit of such relief versus a removal order, nor did she request voluntary departure on his behalf [sic]." MTD at 8. Defendant's argument lacks merit because Defendant has failed to satisfy the exhaustion requirement of § 1326(d)(1) under applicable Ninth Circuit law and is contradicted by the hearing transcript of the removal proceedings.

First, Defendant fails to identify legal support for his argument that ineffective assistance of counsel can satisfy § 1326(d)(1)'s requirement that Defendant exhaust his administrative remedies. Defendant cites several Ninth Circuit and district court cases for the proposition that ineffective assistance of counsel may rise to the level of a Fifth Amendment due process violation and therefore constitute a deprivation of the opportunity for judicial review. Mot. at 8 (citing *United States v. Gonzalez–Villalobos*, 724 F.3d at 1131 n.9; *United States v. Garcia-Morales*, 150 F. Supp. 3d 1201, 1207 (S.D. Cal. 2015)). However, a showing that Defendant was deprived of the opportunity for judicial review during his removal proceedings does not satisfy the exhaustion requirement of § 1326(d)(1). Defendant must satisfy each requirement of § 1326(d) to collaterally attack his underlying removal order. *Palomar-Santiago*, 141 S. Ct. at 1620–1621 ("The requirements are connected by the conjunctive 'and,' meaning defendants must meet all three.").

The Court acknowledges that the Ninth Circuit has suggested that in particular circumstances ineffective assistance of counsel may satisfy § 1326(d)(1)'s exhaustion requirement. Specifically, in *United States v. Villavicencio-Burruel*, the Ninth Circuit suggested,

17

although did not decide, that an individual's decision not to appeal a removal order to the BIA could be excused if there is "no evidence in the record that [defendant] understood his right to appeal and waived it" on account of ineffective assistance of counsel. 608 F.3d 556, 559 (9th Cir. 2010). The Ninth Circuit concluded that this argument was not supported by the record in *Villavicencio-Burruel* because defendant's counsel had in fact expressly reserved the right to appeal during the removal hearing, and so the Ninth Circuit declined to decide whether an ineffective assistance of counsel claim would satisfy the exhaustion requirement of § 1326(d)(1). *Id.* at 559–560.

However, even assuming that such an argument has merit under Ninth Circuit precedent, the Court notes that Defendant in the instant case does not argue that Defendant waived his right to appeal to the BIA on account of ineffective assistance of counsel. Rather, Defendant argues that Defendant's counsel was "ineffective because she failed to explain [Defendant's] eligibility for voluntary departure and the benefit of such relief versus a removal order, nor did she request voluntary departure on his behelf [sic]." MTD at 8. Defendant has failed to identify any precedent that would support a finding that counsel's failure to explain the benefits of voluntary departure and request voluntary departure on Defendant's behalf would satisfy the exhaustion requirement of § 1326(d)(1), rather than the requirement under § 1326(d)(2) to demonstrate deprivation of the opportunity for judicial review.

Moreover, as the Court has already explained, the September 27, 2017 hearing transcript makes clear that Defendant's counsel did request voluntary departure on Defendant's behalf at the September 27, 2017 hearing. Exhibit F at 3–4. However, the IJ ultimately denied voluntary departure and Defendant was removed to Mexico. *Id.* Furthermore, the hearing transcript suggests that Defendant's counsel discussed removal and voluntary departure with Defendant prior to the start of the hearing. Exhibit F at 1 (The IJ asked "Are you ready to plead today?" Defendant's counsel replied "Your Honor, I have addressed this matter with my client. I talked to him extensively. I talked to the wife. And my client is asking that the Court enter an Order so that he

18

Case No. 19-CR-00184-LHK
ORDER GRANTING MOTION FOR RECONSIDERATION; VACATING THE APRIL 8, 2020 ORDER AND JUDGMENT; REOPENING THE CASE; AND DENYING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT

can be removed to Mexico."). Thus, Defendant's argument regarding ineffective assistance of counsel lacks both legal support and a factual basis in the record.

Finally, although the Court does not reach the prejudice prong of § 1326(d), the Court notes that Defendant is unlikely to be able to show prejudice in the instant case. In 2012, the year that Defendant's removal proceedings began, Defendant was convicted of transportation of a controlled substance. Mot. at 9. In 2015, Defendant was arrested for possession of a controlled substance, possession or purchase of a cocaine base for sale, cruelty to a child with possible injury, obstruction and destroying of evidence, and other related charges. *Id.* Defendant was ultimately convicted of obstruction and destroying of concealed evidence. *Id.* Later in 2015, Defendant was arrested for possession for sale of a controlled substance. *Id.* Finally, in 2017, just before Defendant's removal hearing, Defendant was arrested for possession for sale of a controlled substance, possession of a controlled substance while armed, carrying a loaded firearm that he was not the registered owner of, obstructing an officer, and other related charges. *Id.* The September 27, 2017 hearing transcript makes clear that the IJ considered Defendant's lengthy criminal history when the IJ exercised his discretion and denied voluntary departure.

Moreover, the hearing transcript makes clear that Defendant was primarily worried about being removed quickly, rather than receiving voluntary departure. When the IJ asked Defendant's counsel if Defendant wanted to be considered for voluntary departure, Defendant's counsel stated "With voluntary departure, the government is still going to be removing him as quickly as possible, correct? That's his concern." Exhibit F at 4.

Thus, given Defendant's lengthy criminal history and desire to be removed quickly to Mexico, it is unlikely that Defendant would be able to demonstrate that he was prejudiced by the IJ's denial of voluntary departure.

As such, because Defendant did not satisfy § 1326(d)(1)'s requirement that Defendant exhaust his administrative remedies, the Court finds that Defendant may not collaterally attack the underlying removal order. *See Villavicencio-Burruel*, 608 F.3d at 560 (failure to meet exhaustion

requirement under § 1326(d)(1) precludes defendant from collaterally attacking removal order). Accordingly, the Court finds that Defendant has failed to collaterally attack the underlying removal order and therefore the Court DENIES Defendant's motion to dismiss the indictment.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the Government's motion for reconsideration, VACATES the April 8, 2020 Order and the Judgment, REOPENS the case, and DENIES Defendant's motion to dismiss the indictment.

**IT IS SO ORDERED.**

Dated: August 16, 2021

LUCY H. KOH
United States District Judge